# GRAFTON,

## JULY TERM, A. D. 1849.

### RIX v. MUTUAL INSURANCE COMPANY.

A mutual insurance company, authorized by its act of incorporation to direct what *per centum* upon the property insured shall be paid into the treasury by the assured before receiving his policy, and to enforce the payment of annual assessments by a certain penalty, received of a party insured a deposite note, which was made in pursuance of the by-laws of the company, in payment of the *per centum* and of assessments thereafter to be made.—*Held,* that the payments ordered from time to time to be made upon the note, were not the annual assessments provided for in the act; and that his omission to make the payments ordered, did not subject him to the penalty therein provided.

The act of incorporation requiring a member of the company, suffering a loss, to give notice in writing, is satisfied by a notice describing the loss, and inviting the company to assist in measures instituted for detecting the cause of the fire.

If insurance be effected upon a number of buildings separately valued, and upon "the hay and grain therein," the value of the hay and grain in one barn destroyed, not exceeding the amount insured, may be recovered.

ASSUMPSIT, upon a policy of insurance, issued by the defendants to the plaintiff on the 24th day of December, 1840, by which, in consideration that the plaintiff had become a member of that company, and bound and obliged to pay all such sums of money as might be assessed by the directors, pursuant to the act of incorporation and by-laws annexed to the policy, and had also secured to the company the sum of three hundred and one dollars, being the amount of deposit or premium for insuring the sum of $4,300, the defendants insured upon his dwelling-house

and sheds, $1,200,—on his furniture, $200,—on his barns, $200,—on his barn and shed on the meadow, $250,—on his hay and grain therein, $400,—for six years from the said 24th day of December, at noon, to the 24th day of December, 1846, at noon. The declaration alleged that the barn and shed on the meadow, and the hay and grain therein, were consumed by fire on the second day of November, 1844, and that notice thereof was, within thirty days afterwards, given to the corporation.

By the plaintiff's application for this insurance, he agreed, in case of insurance, to hold himself " bound and obliged, according to the act of incorporation and by-laws annexed to his policy." The policy was duly made and issued, in conformity with the by-laws, and recited that the plaintiff had bound himself, his heirs, executors and administrators, to pay all such sums of money as might be assessed by the directors, pursuant to the act incorporating the company and the by-laws annexed, and had also secured to the said company the sum of $301, being the amount of the deposit or premium for insuring the sum of $4,300.

Certain provisions of the act of incorporation and by-laws of the company were made a part of this case, and are sufficiently stated in the opinion of the court. Section 6 of the act of incorporation also provided that in case of loss, the party insured should give notice thereof, in writing, to the company, within thirty days ; and that the directors should ascertain and determine the amount of the loss, and if the party should not be satisfied with their determination, the question might be submitted to referees, or the party might bring an action for said loss, at the next court to be holden for the county of Grafton, and not afterwards.

On the 29th day of October, 1842, the directors of the company made an assessment on the premium notes, to be paid on or before the 31st day of December following, for

paying losses sustained by the company for the three years next preceding that date; and that assessment was made on all notes dated from the 27th of June, 1840, to the 24th day of January, 1842, seven and one half per cent., notice of which was duly given in all the newspapers printed in said county of Grafton, and in the Statesman, printed at Concord, in the month of November, 1842.

The assessment upon the plaintiff's note of $301, amounting to $22.58, has never been paid.

The barn and shed in the meadow, with the hay and grain therein, to be valued by referees agreed on by the parties, if such valuation becomes necessary, were consumed by fire, as stated in the declaration, and notice was given by the plaintiff to the president of the company, on the 5th of November, 1844, of the fact, and inviting a representation of the company at a meeting of citizens, to be held for the purpose of investigating the cause of the fire.

The facts were agreed to by the parties, and submitted at the Court of Common Pleas, and transferred to this court for determination.

*Perley*, for the plaintiff.

*Wilcox*, for the defendant.

GILCHRIST, C. J.   The defence set up by the company in this case, is first, that the plaintiff, by omitting to pay an assessment that was ordered by the directors in 1842, amounting to $22.58, ceased, from thirty days after the time appointed for the payment, to have his property insured during the period of his default. This default continued at the time of the destruction of his property, on the 2d day of November, 1844.

This defence is founded upon a clause in the 5th section of the act of incorporation, which provides that "any member neglecting to pay his annual assessment, within

thirty days from the day appointed for such payment, shall cease to have his property insured until the day on which he pays," &c.; and the question is, whether the default of the plaintiff to pay the assessment in this case is within the provisions of that clause.

The 5th section referred to provides that every person who shall become a member of the company, by effecting insurance therein, shall, before he receives his policy, pay into the treasury such a *per cent.* on the property insured as the directors shall require, and annually thereafter such sum as may be required by the directors, not exceeding the original sum paid in. Then follows the provision upon which the defendants rely, that " any member neglecting to pay his annual assessment within thirty days from the day appointed, shall cease to be insured," &c.

The first section of the by-laws requires each individual, on effecting an insurance, to " make payment into the treasury by note, given for such per centum on the property insured as the directors shall require; the same being intended to cover the amount of risk during the term of insurance, and to be received as security and payment in advance of all such annual assessments as may thereafter be made on such insurance; on which note, a part, not exceeding three per cent., at the discretion of the directors, shall be paid immediately," for purposes indicated, " the balance to be called for at such times as the directors deem requisite for the payment of losses or other expenses." The second section of the by-laws provides that if a member fails to pay such assessments as shall from time to time be made upon this balance of his deposit note, according to the provisions of the first section, he may be required to pay the whole of his deposit note, with costs, &c.

Now the case finds that the plaintiff failed to pay the assessment that was made in 1842, upon his deposit or premium note. He was, therefore, liable, by the terms of

the by-law that has been recited, to be called on to pay the whole of the note. This is all the penalty that is provided for such default, unless it can be shown that this assessment upon the premium or deposit note is the same thing with the assessment named in the act of incorporation.

It would seem that it is not. The act of incorporation requires that the assured, before he receives his policy, pay into the treasury such a per cent. upon the property insured as the directors shall require.

The by-laws, section 1, require the assured to pay into the treasury, by note, given for such per centum on the property insured, as the directors shall require.

The policy recites, that the plaintiff has secured to the company the sum of $301, being the amount of the deposit or premium, and had bound himself and his heirs to pay such sums as might be assessed pursuant to the act and by-laws.

It is quite evident that the note for $301 was received by the directors, as and for the per centum required by the act to be paid by the assured before receiving his policy. It is equally evident that the call for the payment of a portion of that note, in 1842, was not an annual assessment, named in the 5th section of the act.

This assessment is something wholly distinct from the per centum required to be paid before receiving the policy, and is additional to it; and it is for the default to pay this annual assessment, and not the per centum required before receiving the policy, that the penalty is imposed in the act, of ceasing, during the default, to be insured, and the additional penalty of a forfeiture of the delinquent's right to the capital stock, if the default continues for a year.

The act contemplated that the directors might, in addition to the per centum required before receiving the policy, make annual assessments to meet the various con-

tingencies of the company. The proceedings of the company under the act were designed, perhaps, to avoid the necessity of these annual assessments, by requiring the first deposit to be in the form of a note, sufficiently large to cover the probable losses that the company might sustain for the period limited by the policy; the payment of the note to be required only as fast as the money should be required, unless the delinquency of parties should demand an earlier collection of the whole sum secured by it.

The by-laws, therefore, describe the note as "being intended to cover the amount of risk during the term of insurance." They further describe it as "to be received as security and payment in advance of such annual assessments as may thereafter be made on said insurance."

Whether the company, by taking a note so described, would be precluded from making any annual assessments at all, or whether they might make them in the event of the deposit notes proving insufficient to cover the losses and expenses of the company, it is not necessary to determine.

But when it is considered that the by-laws are part of the contract, and that they acknowledge the reception of the note by the company, in express terms, to be payment in advance of future possible annual assessments, it may safely be held that such assessments, not exceeding the amount of the note, must, as against the company, be taken as paid by the note. The assessments, *eo nomine*, are paid; the power of making them and of enforcing their payment as assessments, can exist no longer, and the company are restricted to the security they have expressly recognized as payment of those assessments in advance. It is difficult to find plausible ground for contending that the remedy provided for enforcing the assessments can exist while their payment is expressly admitted, or, in the face of such admission, for contending that the note is merely collateral. *Jaffrey* v. *Cornish*, 10 N. H. 505.

But even conceding a doubt upon this point, the burden would still be upon the company to show that the money by them called for, and by the plaintiff left unpaid, was the annual assessment provided for in the act, and not a mere instalment of the balance due upon the deposit note, before they could insist upon the penalty attached to the delinquency which the act describes.

This, as we have seen, they fail to do. On the contrary, it clearly appears by the case to have been an assessment upon the note that remains unpaid by the plaintiff, and the only penalty is that which the by-laws provide,—the immediate collection of the whole sum secured by it, with costs.

The notice that was given by the plaintiff to the president of the company, that the property insured had been lost, appears to be open to no other objection than that it contained an invitation to the company to assist in measures for determining the cause of the fire. The rules of the company require nothing more than that notice be given to one of the directors, or other officer named, that the loss has happened. This was done, and the act is not impaired by being accompanied with another that was foreign to the purpose. Act of Incorp., sec. 6.

Insurance was effected upon the plaintiff's house and sheds, to the amount of $1,200; furniture therein, $250; on his barns, $250; on his barn and shed on the meadow, $250; and on his hay and grain therein, $400. The word "therein" may refer to the barn and shed on the meadow, or it may refer to all the barns and other buildings named, capable of containing hay and grain. It is immaterial to the determination of this case which construction is given to the policy. If the whole of the hay and grain, in all the buildings named, is insured, and the loss is equal to the sum insured, the plaintiff is entitled to recover that sum. But there is no principle of construction by which the sum insured on all the hay and grain can be so appor-

tioned to the different parcels, that no greater sum can be recovered for the present loss than a sum that shall bear the same ratio to $400 that the value of the hay and grain, in the barn on the meadow, bore to the value of all the hay and grain in all the buildings named.

The value of the hay and grain being ascertained, the plaintiff will be entitled to judgment for the same, not exceeding $400, and the sum insured on the barn added.

*Judgment for the plaintiff.*